Yes your honor, good morning. Submission isn't consent. When officer Schmidt told Mr. Liphart, you're under arrest, you're going to jail. He was under control. He was under the control of the officer. And we want him to submit to that lawful authority. And he did. He listened to the officer like we encourage people to do. But that doesn't mean that just because he submitted, and the officer directed him to go get his cell phone, doesn't mean that he consented to the seizure. Reasonable suspicion isn't going to justify the seizure either. Why isn't it enough? I mean, you know, yeah, we understand that the Schmidt spots the cell phone when he's in the apartment as Liphart is getting his shoes on. And he knows it's a second device. He later on says, well, I was mistaken. I thought he couldn't even have cell phones because they can connect to the internet. It turns out it's a little fancier than that. But he spots this and he just says, you know, let's grab that. Let's go grab that real quick. Liphart immediately, you know, thank you for the video. I mean, it was very helpful. Immediately pops in and gets it. After, though, he says that it doesn't work. Except the minute he gives it to Schmidt, Schmidt can see that it does work. And, you know, it seems to me that at least reasonable suspicion is building that there is something wrong with the possession of this other cell phone. I would disagree. I think he says that one doesn't even work. That could mean it doesn't, you know, connect to the internet. That means maybe it's old, which it was. That isn't something I can, he wouldn't be able to take it to a provider and have it activated. It could mean a bunch of different things. Is that the common sense? I mean, if an officer hears that one's not, that don't even work anymore, is the quote from the tape, from the video. I mean, the common sense understanding of that is that it's a dead phone. And then you turn it on. It's not dead. And it shows Grindr and something else. I can't remember the other one. You know, a couple of apps. Surely the officer is justified in hanging on to it. He doesn't do a search of the phone at that point. That only makes sense. Well, I would disagree. And I think the point here is that even if I take it, that it was, you know, is trying to conceal that it wasn't dead. And the common sense understanding is that it would be out of power, not just not working or being able to connect to a network or that sort of thing. It's not suspicious for him to have those. The fact of the matter is, is that his condition is, look, don't access the internet or attempt to access. What makes it a little bit, you know, echoing Judge Wood's comments, what makes it a little bit suspicious for me is that he has a flip phone. And I think the phone that he was using to speak was a flip phone, right? So it's not, you know, if he had, I guess if he had, I'm just making this anymore. So he's got a different iPhone, you know, that I've seen before, but it's the, it's, it's the fact that he's got a flip phone that he's talking on the telephone with, and then he's got an iPhone. And I think a reasonable person would immediately assume that you use the other phone to connect to the internet. And then when he says it doesn't even work and he picks it up and it goes on, I mean, I guess at that point, what would you expect the even, this is after the comments, right? Assuming he didn't consent, let's just assume for a minute he didn't consent. The officer said, let's go get that. I can't remember exactly the words that he used, but something to those effect. You say it was a command and the government, I understand, says it wasn't a command. It was more along the lines of request. For, put that aside, go grab it. He goes grab, it doesn't even work. He hands it to the officer and he's now, he's got two phones and he's got, he's clearly at least wrong or mistaken that it doesn't work. And what's he supposed to do? Just set it, excuse me for the inconvenience, set it on the dresser and walk out? Let me address the first part of your question. Assuming, you know, we're putting to the side the issue of consent, there's a reasonable suspicion I think maybe as recently as five years ago, something like a flip phone and then something that looks like, that doesn't flip, we'll call it open-faced, like an iPhone. Maybe that could get you to reasonable suspicion, but the fact of the matter is now is that flip phones, you know, can connect to the internet. All sorts of things can. Do they even sell flip phones anymore? Yeah, you can, you can. I just don't know how you haven't seen one in so long. Yeah, I mean, and I don't think the case should turn on that, but I see the point. I understand, I understand. Yeah, the point is he's going, he's going to have a lot of, it's common for folks to have a lot of different screens and different devices. And I don't see the flip phone, open-faced phone dichotomy as, I guess, I don't see that as suspicious as I might have a few years ago. Now, I think you're right that it is pretty common now for people to have lots of devices. You might have a work phone and a personal phone, or you might have an old phone and a newer phone. I mean, it seems like the world is littered with these things. Mm-hmm. And I guess then, if it is suspicious enough, I just, I guess I disagree with somebody saying, no, that, no, that don't even work. That can't get us from, oh, he has, you know, devices just like all of us or average folks do. That doesn't get us to, that doesn't get us to the reasonable suspicion that he can seize it. Now, the question you're really asking is, what is the officer, or excuse me, what Judge Kirsch is asking is, what's the officer supposed to do? What should he have done? And what I would argue is that he shouldn't have even picked it up. And then he wouldn't have seen what was on it or what wasn't. But it was handed to him. It was handed to him by lip art. I mean, he'd like say, don't touch me, you know, or. I think he would have, what he should have done is ask first in a way that made it apparent to lip art that he will, you know, the officer was asking, not commanding. And he shouldn't have even picked it up, you know, in the first place. So it would have been fine if he had said, would you mind grabbing that phone for me? I think would be a lot closer. I think there would still be the overarching, hey, you're going to jail, you're getting your shoes on, I'm going to cuff you in a minute. But I think if we have something like the cases I said in the reply brief, and the government gets into them too, Sabo is one that show, look, this is how you ask. Or you give them a form or a sheet, you know, so it's memorialized. I see I got two minutes left. I'll reserve. Thank you. Well, thank you, your honor. Good morning, may it please the court. My name is Elizabeth Altman, and I represent the United States here today. The United States prevails on all three theories of suppression raised below, argued by the defendant and that he also brings before this court. But we only need to prevail on one of them for the defendant's motion to be denied and for the lower courts ruling to be upheld. The government, as we argue in our brief, believe that the defendant did consent to providing the officer the phone for the reasons expressed by both the magistrate court and the district court. And then reiterated here today by Judge Wood, that he immediately went in and grabbed it without even hesitating. But it seems- I mean, I actually found some traction, though, in the defense argument. You know, he's in a world of trouble at this point, right? He knows that he's at least going to miss work the next day, which he stressed on that lengthy- when the people finally came back on the phone in the video. He's not happy about that. He- you know, even that, in other words. And so the more cooperative he is, it stands to reason, the more he might be able to minimize what flows from this encounter with the police officer. So instead of just saying, no, I'm not going to grab it, when the officer says, well, let's go grab that real quick. You know, he probably figures the officer's just going to walk into the bedroom anyway and pick it up. Seems like that's a logical scenario, at least. So if he's just got this inevitability hanging over him, consent might not be the right paradigm. Now, I do think once he says it doesn't work and he gives it to Schmidt and it turns on automatically, he's in trouble. But I'm not 100% on consent. The one thing I will say about consent, Your Honor, and I do agree reasonable suspicion is, I don't want to say a stronger argument, but certainly seems to have more backing. The one thing that this defendant demonstrated to everybody is that he knows how to say no. When Officer Schmidt showed up to arrest him, he got on the phone and he said, wait a minute, you can't arrest me. I want to talk about this and called the state probation officer to say, hey, this is wrong. Yeah, I was home, he says 25 times, you know, I was home well before 4.30. Right. So he knows when he doesn't want to do something or when he thinks something is wrong, how to say no. So, well, I understand that it could go both ways. And I think that both the district court and the magistrate court both said it's a close call. But he was trying to avert arrest. He was trying to avert the need to go off with the officer, period. And he stands very prominently in the door. He is not letting the officer in at that point in time. And the officer doesn't have any line of sight into the bedroom or anything. So it's easy to see why he might've pushed the probation people. But then once the officer's in there and he's in there, he's just getting his shoes to go off to jail. He's in a different position. He is in a different position. And, you know, as the district court noted, you know, it looked at the totality of the circumstances, both courts and found that it was consent. But this court doesn't have to, to the extent there's any sort of qualms about that or doubts about it because the reasonable suspicion is so strong. Um, the, before going into the house, the, um, officer Schmidt checked the conditions. He knew what they were. He knew that he was not supposed to have access to the internet without approval. He, um, said that he would have anticipated that approval would have been indicated in the notes, um, had there been approval, um, and judge Crocker, the magistrate court found that explanation to be credible. So right there, when he sees a device that can connect to the internet, particularly when he's been using a flip phone in his other, uh, interactions, the officer has reasonable suspicion to believe that he's violating the conditions of his supervised release. Um, and, and that right there under, uh, Wisconsin act 79 gives him grounds to take it. Um, the probable, or I'm sorry, the reasonable suspicion grew stronger, um, when he talked about it not working when he, um, uh, took possession of it and it popped on and showed, um, internet connections and, and dating apps. And while it's true that most of us have two cell phones, um, most people on supervision that that's not really generally allowed. And the officer thought it was suspicious that he had two cell phones, um, particularly, um, when, when one connected to the internet. So that's my saying that I don't, I don't think the officer said that, but the officer specifically said that he found it suspicious that the defendant had two phones. Um, so all of those reasons gave him abundant reasonable suspicion to take that phone. Um, they also then go towards good faith, which we, um, have, have not talked about it all yet today. Um, just very briefly, the lower court heard, um, officer Schmidt's testimony. He found that it was an innocent mistake. Um, when the officer wrote smartphone in his mistake, as opposed to internet, when talking about what he was banned from having, um, he noted that it was important that officer Schmidt admitted the mistake and gave a reasonable explanation for it. Um, and the other additional fact that goes toward the officer's good faith is the fact that he got a warrant. Um, he didn't just take the phone and start looking through it. Um, as, as a district court noted, there's nothing to even suggest negligence or gross negligence. And the defendant claiming that the officer acted that way, just, um, ignores the findings of facts, um, that the lower court made. Um, unless the court has any additional questions on any of the three, uh, grounds, uh, I would simply respectfully request this court affirm the lower court's rulings and the defendant's conviction. Thank you. Mr. Morris. Yes, Your Honor. Um, uh, I guess I would, um, want to amplify something I, um, I said on, uh, in my initial remarks and in response here to Ms. Altman, which is, uh, the seizure from our point of view, uh, from the defense point of view happens when, uh, officer Schmidt commands Lippard to get the phone. So from our point of view, um, he shouldn't have even been looking at the screen. Um, the court disagrees, um, uh, the seizure doesn't happen until it's in his hand and he sees it, um, uh, then, um, my argument there isn't going to get any traction. Now, um, uh, to go back, I guess, to the question of, well, what should the officer have done? Um, I think that's pretty clear is, um, uh, he looked at the rules, that was correct, uh, familiarized himself with them before entering the apartment and he did so, um, and I think it, his, um, I guess lack of care, uh, thinking, oh, this was, or treating this as a functional ban, uh, on cell phones or any internet ready devices, um, uh, that's not reasonable and that's not what we want law enforcement to do. Um, and I think if, uh, go on a little bit more about this at my brief, if, um, the court wants to, uh, say, you know, if the court wants to say, oh, well, this is evidence of unauthorized access to the internet, um, I think that's, that's an argument that proves way too much and it would encompass way too many, uh, I guess, uh, way too many parts of the house, um, containers lead to a very broad search. Um, so, uh, I guess I'm running out of time, but that would be the two points is, um, uh, it's not suspicious and, uh, that it would prove too much. Thank you. Thanks to both counsel and the case is taken under advisement.